My name is Daniel Vail and I do represent the EEOC here today. We'd like to reserve two minutes for a little bottle if it pleases the Court. Your Honors, in this case, the EEOC is here claiming that Maricopa County failed to rehire the charging party, Teresa Toth, because of her age. They failed to rehire her into a job that she had performed well for six years. The District Court, of course, granted the motion and we're here asking this Court to reverse that grand summary judgment. We believe that the District Court, in granting the motion for summary judgment, made several serious legal errors, reversible legal errors. First, in our view, the District Court wrongly ruled that the EEOC had not proffered any admissible direct evidence of age discrimination. To the contrary, however, we offered deposition testimony of three separate individuals, Anderson, Bigler, and Conchos, all of whom heard Mayberry, and she's the decision-maker in this case, make a derogatory remark about Teresa Toth immediately after the four interviewed her. I'm sorry, I — where did the three of them say she said it? I'm sorry, Your Honor? Where did the three say she said that — losing the name. It was Ms. Mayberry. Ms. May — no, yeah, was — was old. It was immediately after the interview, Your Honor. Where in the depositions of each of the three people did they say she said it? Well, Your Honor, let's take Anderson first. Anderson specifically testified in her deposition that when she was asked by the EEOC's investigator, was a statement like this made, did Ms. Mayberry, right after the interview, call Ms. Toth an old employee? Ms. Anderson testified in her deposition, I'll have to think about that and get back to you. So she — Here's my point. They — at most what the evidence shows, and it may be enough, but I'm just taking issue with your statement that they said, they heard her say it. She may have said it. That's true, Your Honor. Okay. Well, there is a rather big difference. It's just a tiny word with a big difference. So I do take issue with your flat statement that they said she said it. Okay. Respectfully, Your Honor, I think in our briefs we were careful to point out exactly what is the — What is the meaning of it? She said something. The question is what precisely did she say? Right. Anderson testified that at one point she did specifically state unequivocally she told our investigator that Mabry called Toth an old employee or an old, tired employee right after interviewing her. Anderson specifically testified that she said that to our investigator. There's no equivocation about that. Now, it's true. Anderson did come back after she was talked to by an investigator of the defendant, by the county, and told the importance of the specific word old. Anderson then also in her deposition said she could no longer be certain that the statement was made. But at one point in time, and much closer to the actual events than later when she backpedaled a little bit, at one point in time, Ms. Anderson did state unequivocally that that statement was made. Now, of course, it is true, and we acknowledge this in our briefs, she can no longer be certain that the statement was made. But what's important to remember is that Anderson has never categorically recanted that she told our investigator the statement was made, and she's never also said affirmatively that she never used the word old. That's important. But doesn't the context suggest that when she was talking about an old, tired employee, she wasn't referring to advanced age, but a former employee or a burned out employee, like my old friend Judge Reinhardt? Well, again, there's some testimony that the words tired, worn out, and or burnt out may have been used in conjunction with the word old. But I think if you look at what one of the witnesses said, which is, looks like I've just interviewed an old, tired government employee, it wouldn't really make much sense for her to have made that kind of statement when it was obvious. Everyone in the room knew that she was a former government employee. So I submit that by using the word old, it was an undeniable reference to her age. That's our view, Your Honor. At least a reasonable jury could conclude that. And it's important for us to remember that here today. We are talking about a grant of summary judgment. And this Court obviously imposes a very high burden for the grants of summary judgment. This Court has expressed repeatedly its reluctance to affirm grants of summary judgment, particularly whereas here there is direct evidence of age discrimination. Let me ask you this. If you look at all of our cases that have dealt with what constitutes direct evidence of discrimination, whether it's age or race or gender, they're all far more explicit than any of the evidence here, including the one comment about – which was directly about age in Pottinger, referring to an old management team. And we said that didn't suffice. So how do you square your view with that line of authority? Sure, Your Honor. Thank you for the question, because that is an important point of distinction here. There are several cases in which this Court has found that arguably age-related comments were not direct evidence, the Nesbitt case, the Potlatch case, the Merritt case. But in each of those opinions, it's important to look at the Court's actual reasoning for finding that it wasn't direct evidence. What are those reasons? The reasons were either the statement was ambiguous, meaning it could have meant something completely unrelated to age, like Deadwood in the Potlatch case, or, and or, it was completely unrelated to the actual decision at issue. That's not the case here. Here, we have, arguably we have evidence that right after interviewing Ms. Toth, the decision-maker, the sole decision-maker, called her an old employee. Now, two of the people who were old – Who was also old? Well, that's true. Well, I'm not sure what you mean if I would call her old. I will point out – Well, they're the same age, basically. I mean, so it's the pot calling the kettle black. Well, respectfully, Your Honor, that's not true. I mean, the decision-maker was 39 at the time that all of this happened, and Ms. Toth was 50 years old. So the decision-maker was substantially younger. And the Supreme Court in O'Connor has clearly said that it's very probative of age discrimination if someone's replaced with someone substantially younger. But I think it bears emphasizing here that two of the people who heard the statement made, Bigler and Conchos, both concluded immediately that Mabry, because of that comment, was not going to be rehiring Ms. Toth. So we have here what we did not have in this Court's cases in the Nesbitt case, in Potlatch, in Merrick, in Rose. We have unequivocal, an unequivocal age-based statement, and we have it being made right in the context of the decision at issue. Well, but the context was that it was after the interview, and she was supposedly complaining about the salary, as she had before. I mean, that's the context in which the comment was made, isn't it? Well, why is that an age comment? Well, I think the age comment, Your Honor, is that she specifically called her old. That's an unequivocal age statement. No, no, no. Well, you know, after previously complaining, leaving the job because she didn't like the salary, then she comes back and has an interview where, during the interview, she's again complaining about the salary. That's the context in which she was referred to, arguably, as an old, tired employee who's, I mean, I just don't know where you get an advanced age reading out of that when you put it in the context of the discussion. I think if all we had had was tired out, worn out, burned out, then that inference might be more plausible, or the other inference, that age was what was at issue, might be less plausible. But here again, there are two individuals who at one point did say that they thought she may have said old. Also you have two minutes left. Okay, Your Honor. I'll save those for rebuttal. Thank you. Good morning. I'm Catherine Baker, and I'm here for Maricopa County. Let me start where the panel and counsel have spent most of their time. I want to be very careful because I've reviewed the record very closely, and I think the counsel just told you about what the statements supposedly were. And I suspect that the Court has carefully reviewed the record as well. There isn't a single witness. And I think you'll see when you look at the oral argument transcript in the district court, this was one of the things the Court was struggling with, and there was an exchange between the EEOC attorney and the judge where the judge was saying, who is it that's going to sit on the witness stand? Who are you going to offer me with clear, unequivocal evidence that old was said? And the problem is, and we told the Court at the beginning of this case, this is what the case is about, and we want to conduct discovery on this. And we deposed every single person that was in that room when she was interviewed. We deposed every single person they ever claimed made the --"heard her say old," and every single one of them, without exception, swore to tell the truth and said, I cannot say it was old. One of them said worn out. One of them said tired, and one of them said tired and burned out. So where does the EEOC even get this claim? Well, there's an --" if you read Anderson's testimony one way, she at one point said, well, maybe she did say old. The real question then would be why does that not suffice to raise a triable issue of fact? Thank you, Your Honor. Again, I think you have to look at what Anderson said very carefully, and what the EEOC did with an investigator who will never testify, because we have a stipulation that their investigator will not testify, read some statement of some kind of which there's no clear record, because they didn't keep a clear record of what they did. Read some statement, and I think this is what the judge was referring to when he said, what is it? And said, was it said? And Anderson thought for a day and came back and said, she said it. It's very clear in the deposition that no, the term old never came from Anderson. And what Anderson explained she meant was a statement like that was made. And then she said, oh, my gosh, if they'd ever told me their question was really did she say old, I would have said, I can't tell you. I can't tell you today. The other way is she was told by the county that old was the key to the county losing the case, and that that was critical. And then when she heard that, she went back and said, well, maybe it wasn't old. I really don't know. We'd have to speculate, Your Honor, with information that's not in the record to come to that conclusion. Because Anderson was very clear. She was very detailed about telling the EEOC in the first instance, this is not an age case. It had nothing to do with age. And she made those statements to the EEOC during the investigation before our investigator ever talked to her. I would suggest to Your Honor that if the EEOC wanted to legitimately prosecute this case, they would have made it clear to the witness, oh, my gosh, this is what we're asking you about. I don't want to proceed on a case where I don't have the evidence. Here's the issue. What's old said? And apparently, they either said that to her and didn't record it, or they didn't say it at all because there's no evidence of it. Anderson was irate in her deposition when she said, oh, my gosh, I learned what this was about. She talked about her father reading an article in the newspaper and saying, oh, look, they're saying they're going to go after Mr. Romley, the county attorney for age discrimination. She said, I can't believe it. It had absolutely nothing to do with age. That is all in the record. There's no way to read the Anderson deposition and come to a reasonable conclusion that she was impacted by anything the investigator said. She was the most strident witness. And she said, I did not give them the word old, and I didn't even know that was the issue. Where's their investigator going to take the stand? And you may see that the district court was also saying, OK, she gets up there and denies it. How are you going to prove it up? How are you going to prove it up? Where's your admissible evidence? And that's where the EEOC had difficulty. They can't prove it up. They don't have the evidence. There is no direct evidence of the word old. They refer to Conchos, and they made quite an issue out of this in their brief, where she said, she was asked, did anybody ever say Mary Berry said old? And she said, well, sort of. What was she referring to? She was referring to her own statement to a third party Lange when she was sitting around speculating or thinking out loud because Lange had asked her, why wasn't Toth was hired? And Conchos said to herself out loud, did she say old or did she say tired? No, she said tired. And so the EEOC is telling you that Conchos said Mary Berry said old when she didn't say that at all. Conchos said, Conchos said old. And then she testified unequivocally. I told Lange it was tired government employee. And she testified in deposition. It was tired government employee. I don't even know where they get Beigler as saying old. Beigler said tired, burned out government employee. So that's the statement we have. It's got to be one of the three. That's not direct evidence because as you have pointed out, the inference under the facts here is that she was saying, oh my gosh, I've just interviewed somebody who worked for us before who left because they weren't happy. They didn't like the pay. They didn't like the benefits. They went to a better paying county job. They didn't like it there. They came back to interview with us. And we started talking about flex time, a benefit that this person doesn't even have. Then we have, I mean, that the county attorney's office doesn't have and this person won't get. And then we have Mayberry saying, and in addition, she answered a question talking about being a whipping post as a victim advocate. Okay, that suggests a bit of burnout. That suggests a problem. So we get tired government employee, burnout government employee, or worn out government employee. Those are the only three statements that are ever going to come in for admissible evidence. We look at the context. As Your Honor has said, it's nowhere near what this court requires to say there's direct evidence. It's just not there. And so then we have to look at the circumstantial evidence they have. And we've gone through issue by issue by issue, and they just don't have the circumstantial evidence that they need. They have to show by circumstantial evidence that the reasons that we proffered are not our true reasons. The biggest glaring one that we have is her attitude and what she said in the interview. And we've cited two cases where it's very significant what the plaintiff admits. And I sat here this morning going through the record, looking at the circumstantial evidence, and just started to make a list. What did Toth admit? You know, she admitted that so many of these considerations were legitimate and non-discriminatory. I asked her specifically for this purpose. Wouldn't you agree that the county would legitimately be concerned if you're paid more where you are now and you're coming back and asking for less money? And she said, yes. There are no – I stopped counting. There's no less than 14 admissions that I put together here in just about 10 minutes, because for issue after issue after issue, Toth admitted under oath in her deposition that these were legitimate reasons for the employer to consider. Toth tried to say also that we had shifting explanations and that somehow they're trying to create an issue of fact over pretext by saying we've changed our explanations. Kennedy, you have 14 different reasons that she admitted to that were valid reasons for not rehiring her? I have 14 different admissions, and I can go through them if you'd like me to, Your Honor. No, I just wondered what the real reason was. I understood the reason was that this woman who did the hiring thought she had a bad interview and thought she was a burned-out government employee, whether old or not. But I didn't know there were 14 reasons. What I'm saying is there are 14 admissions by Toth as to items that could be adequately considered by an employer. I think they could fall under the category. For example, five of these may fall under the same category, the same type of reason. For example, that you might become disenchanted with your job if you didn't like it before and you're coming back to a lower-paying, lower-level job and the job hasn't changed. That's something that Mayberry says she thought of in the interview. So, again, that's part of the interview reason. When she came in and she was dressed, who cares whether it was jeans or denims or whatever it was, Toth admits that it was a casual day at her workplace and she didn't change her clothes. Again, that's interview-related. So you're right, Your Honor, that Mayberry got information from Jennings who said flat-out don't hire her. And then Mayberry, who supposedly discriminates based on age, said, no, I'm going to interview her. And I have to correct counsel, Mayberry was within the protected age class at the time of the interview. It was Bigler that was it. I don't really think that matters much. I mean, I might like to have young employees and maybe I wouldn't like to hire people my age, but that doesn't prove much, except I like young people. You're right, Your Honor. It may or may not. We've cited to you out-of-circuit cases where that has been taken to be a presumption of no discriminatory intent. But I would agree with you that that doesn't necessarily answer the question, but I did want to correct what counsel said. And so when you ask who to hire, you know, the problem as to whether there's a conflict about the reasons for not hiring her, three of the people seem to think it was a very good interview. And the person who didn't hire her says, I didn't hire her because she gave a very bad interview. Maybe that suggests a difference in judgment, and the person who had the final judgment had the right to have the final judgment. But it may raise a question as to whether that really was a reason if three of the people thought she did very well and one said, oh, it was terrible. I know my time is up, Your Honor. May I comment on that? Yes. Oh, okay. The fact that non-decision-makers disagree with the rationale of the decision-maker does not impeach the belief of the decision-maker. The question we have to answer is what Mayberry said, her true reason. And she didn't just say these reasons and have us offer no more evidence. We offered objective evidence that the things she took as negative indicators weighing against Tulse rehiring are things that actually occurred. So while the other interviewers may not have cared that she didn't dress up and change from casual day, Mayberry did. While the other people may... But aren't we asking, trying to determine something very difficult, which is why we say that cases where it's motive normally are best to leave to the fact finder. Yes, you can say she came in in jeans or she came in and didn't, her clothes didn't look so good to me. But that's a very subjective thing. We don't know whether someone's telling the truth when they say I didn't like her attire or whether that's an excuse. And that's why this type of problem is very hard to determine on summary judgment with those kinds of explanations. Can I respond to that? Yes. Thank you, Your Honor. I respectfully disagree because we have a person here who articulated reasons that are reasonable, non-discriminatory reasons, and they are borne out by the objective facts. So the mere fact that a non-decision maker interprets something differently does not raise an inference of discrimination. And remember, the EEOC has the burden of proof through their circumstantial evidence to raise an inference of discrimination. This raises an inference of nothing other than two people looked at the same facts and interpreted them differently. But by the way, Tulse admits, we were entitled to interpret them negatively. She agreed in her deposition that we were entitled to consider the fact that she didn't dress up with for her interview, the fact that she had complained before. I don't know that her statements about what the law is are particularly relevant, whether she thinks, yes, you're entitled to consider that or not. She admitted it was a reasonable consideration, which is what – it's a motive issue, and that's what we're looking at. If that was really the motive. All right. Well, thank you. Thank you, Your Honor. Thank you, Your Honors. I think that's exactly right, Judge Reinhart. It is irrelevant what Toth said as to whether or not a reason could be legitimate. What's relevant for purposes of resolving this case and deciding whether summary judgment was appropriate is what the decisionmaker said motivated her decision. And what did she say? There were two reasons. There was the negative reference allegedly from Jennings, which is completely contradicted by a performance review that Jennings herself signed where she specifically said that Toth had a great professional attitude. So that right there calls into question whether or not Jennings honestly could have believed that Toth had a negative attitude. And the other thing is the performance in the interview. And this is exactly one of the prime errors that the district court made. The district court erred at summary judgment in crediting what Mayberry said was her subjective impression of the interview. Mayberry is certainly entitled to disagree with all three of the other interviewers who were there at the time. She's absolutely entitled to disagree. But it's wrong as a matter of law to say that what those other three thought of that interview has no bearing on whether there's a shadow of doubt cast over whether Mayberry actually was proffering honest reasons. Mayberry said that the problem with the interview, in her view, was her answers to questions and her demeanor in the interview. That's the crux of what Mayberry had a problem with in the interview. Let's hear what all three of the other people, the only other three people there, thought of the interview. Ander, Bigler, and Contos all praised her interview, saying she was pleasant, genuine, humble, and sincere in the interview. They said she interviewed well, did fine. These are all direct quotes from the testimony. Knew all the responses, answered all the questions appropriately, knew the job, had been a good advocate, and would be a good advocate again. Respectfully, we don't see how that can not raise a question of fact as to whether or not Mayberry is honestly proffering what she believed to be the real reason here. Now, with respect to the direct evidence point, again, we think if you carefully read the deposition testimony, you will find that Anderson admitted telling the EEOC's investigator that she used the word old. All that she later said is, now she can't be certain the word old was used. And of course the EEOC proffered the word old, asked her, did she say old government employee? Otherwise, there would have been no reason for Maricopa's investigator to later go back and educate her that the word old was what was at issue here. So, Your Honors, I'd like to remind this Court that under this Court's decisions in Dominguez-Curry and Poppe-Lift, where comments such as old and burned out were deemed direct evidence, one comment by a decision maker is enough to preclude summary judgment for the employer. That's clearly this Court's case law. And that's what we have here. This case should be left for the fact finder to decide if Mayberry used the word old and if Mayberry was proffering honest reasons about the interview and also one word. Does your case depend on whether she used the word old? Not at all, Your Honor. Even if this is a totally circumstantial evidence case, what is the question that this Court must answer? Did Mayberry honestly proffer reasons? The only reasons Mayberry gave, and Maricopa has proffered itself a laundry list of plausible post hoc policy justifications for why it might not have been a good reason to hire her, but all Mayberry focused on was a reference from Jennings and the interview. And there is abundant evidence in the record to enable a fact finder to reject both of those reasons. If you go back and look at our briefs, Your Honor, and the evidence that we cited, there's abundant evidence here to create a question of fact. Thank you, Your Honor. Case can start. It will be submitted.
judges: Reinhardt, Rymer, Silverman